**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| In Re: CLEARY PACKAGING, LLC | * | Case No. 21-10765-MMH |
| Debtor. | * | |
| | * | Chapter 11 |
| _____ | | |
| CANTWELL-CLEARY CO., INC. | * | |
| 7575 Washington Blvd, Suite A | * | |
| Elkridge, MD 21075 | | Adv. No. _____ |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | | |
| CLEARY PACKAGING, LLC | * | |
| 8700 Larkin Road, Suite A | | |
| Savage, Maryland 20763 | * | |
| | | |
| Defendant. | * | |
| _____ | | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. § 523(a)**

Plaintiff, Cantwell-Cleary Co., Inc. ("Cantwell-Cleary"), by and through its attorneys,

McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., pursuant to 11 U.S.C. §§ 523(a)(2)

and (a)(6), § 1192 and Bankruptcy Rules 7001 *et seq.*, files this Complaint to Determine

Dischargeability of Debt against the Debtor and Defendant, Cleary Packaging, LLC (the

"Debtor") and, in support thereof, states as follows:

**<u>Introduction</u>**

This matter involves the willful and malicious conduct of the Debtor and its principal,

Vincent D. Cleary, Jr. ("Vincent Jr."), which was the subject of a jury trial in the Circuit Court of

Maryland for Anne Arundel County.   Vincent Jr., the former president and director of Cantwell-

Cleary, formed the Debtor for the purpose of competing directly with the Plaintiff and destroying the Plaintiff's business.   In doing so, the Debtor and Vincent Jr. caused the breach of non-compete agreements between Cantwell-Cleary and its most valued sales employees, which precluded them from, among other things, taking employment positions with a competitor within a 75 mile radius of Plaintiff' offices, and from soliciting Cantwell-Cleary's customers.  Vincent Jr.'s scheme was motivated by the ill will he held toward his siblings and his 82 year old mother, who would not transfer her stock ownership in Cantwell-Cleary to Vincent Jr. without assurance of fair consideration.

Vincent Jr.'s employment with Cantwell-Cleary was terminated on June 18, 2018 when his plans to formally form the Debtor and compete with Cantwell-Cleary were discovered.  The Debtor filed articles of organization on or about June 22, 2018. Thereafter, the Debtor and Vincent Jr., along with others, organized a mass walkout of Plaintiff Cantwell-Cleary's employees in an effort to cripple Plaintiff's operations, which took place on July 16, 2018.  The employees participating in the walkout were immediately hired by the Debtor in positions similar to what they occupied with the Plaintiff.  Specifically, certain highly valued sales employees subject to binding non-compete agreements, who had cultivated close business relationships with Cantwell-Cleary's most valuable customers, were hired by the Debtor promptly after their resignations from Cantwell-Cleary.  The Debtor began to immediately pursue Plaintiff Cantwell-Cleary's employees and customers that had established relationships with the Plaintiff.  Among other things, the Debtor and Vincent Jr. conspired with others to convert and misappropriate Cantwell-Cleary's proprietary information, including information which permitted the Debtor to immediately solicit Cantwell-Cleary's most valued customers, all aimed at destroying Plaintiff Cantwell-Cleary's business and revenue stream.

Beginning on November 2, 2020 and concluding on November 19, 2020, Cantwell-Cleary's claims against the Debtor and Vincent Jr. were tried before a jury in the Circuit Court of Maryland for Anne Arundel County. The Court provided detailed instructions to the jury on Cantwell-Cleary's claims, notably its claims in Count I of the Amended Complaint, for Intentional Interference with Contracts, and Count III, for Tortious Interference with Business Relations. The jury rendered a verdict in favor of the Plaintiff on Count I and III, and entered judgment against the Debtor in the amount of $4,715,764.98.

The Judgment is non-dischargeable pursuant to, among other things, Sections 523(a)(6) and 1192(2) of the Bankruptcy Code. Furthermore, as set forth in the accompanying motion for summary judgment, the Judgment is entitled to preclusive effect in this Court because it satisfies the necessary elements of a cause of action under Section 523(a)(6) for willful and malicious injury.

### Facts and Parties

1. Cantwell-Cleary is a corporation formed pursuant to the laws of the State of Maryland with its principal place of business located at 7575 Washington Boulevard, Elkridge, Maryland.

2. The Debtor, Clearly Packaging, LLC, is a Maryland limited liability company with an office located at 8700 Larkin Road, Suite A, Savage, Maryland 20763.

3. On or about July 20, 2018, Cantwell-Cleary filed its initial Complaint against the Debtor and Vincent Jr. in the Circuit Court for Anne Arundel County, Case No. C-02-CV-18-002135 (the "Circuit Court Action"), arising out of a fraudulent scheme formulated and executed by the Debtor and its principal, Vincent Jr., to compete with and destroy Cantwell-Cleary's business operations. On January 16, 2019, Cantwell-Cleary filed its Amended Complaint.

4.     Beginning on or about November 2, 2020 and through November 19, 2020, a jury trial was conducted in the Circuit Court Action.  On or about November 19, 2020, the jury rendered verdicts in favor of Cantwell-Cleary and against the Debtor for intentional interference with contracts and tortious interference with business relations, awarding judgment against the Debtor in the amount of $4,715,764.98 (the "Judgment").

5.     On February 7, 2021, the Debtor commenced a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

6.     The Debtor designated itself as a small business debtor and elected to proceed under Subchapter V of Chapter 11.

7.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

8.     Venue in this Court is proper pursuant to 28 U.S.C. § 1408(a).

## Statement of Facts

9.     Plaintiff Cantwell-Cleary is a corporation serving as a wholesaler of numerous office related products, including packaging supplies and equipment, janitorial and sanitation supplies, and paper products.

10.     On or about February 13, 2013, Vincent Cleary, Sr., the CEO of Cantwell-Cleary, passed away.

11.     Vincent Jr., the sole owner of the Debtor, is Plaintiff Cantwell-Cleary's former president and director.

12.     Vincent Jr. is the son of Vincent Cleary, Sr. and Shirley Cleary.  Vincent Jr. became an employee of Plaintiff Cantwell-Cleary in or about 1987.

13.     Vincent Jr.'s employment status with Plaintiff Cantwell-Cleary quickly advanced, as he was promoted to various high level positions such as Sales Manager and eventually became President, CEO, and a member of the Board of Directors of Cantwell-Cleary.

14.     In 2012, Vincent Jr. became involved in a lengthy divorce proceeding with his spouse.  In October of 2015, he ordered the Board of Directors to vote to remove him as President and CEO of Cantwell-Cleary in an effort to conceal assets from his former spouse.  As a result, Shirley Cleary, who had worked for Cantwell-Cleary for over 40 years, was given the title of President and CEO of Cantwell-Cleary.

15.     Despite being removed, at his own direction, as President and CEO of Plaintiff Cantwell-Cleary, Vincent Jr.'s removal was in name only.  Vincent Jr. remained on the corporate Board of Directors, continued the same level of involvement in management of the day to day operations of Cantwell-Cleary, retained access to all proprietary corporate files and financial accounts, continued to make use of corporate property, and continued to exercise managerial authority over all corporate employees.

16.     Plaintiff Cantwell-Cleary has a policy that requires new sales representatives to sign non-compete covenants in conjunction with their employment contract.

17.     Since the onset of this policy, the non-compete covenants have taken three different formats. The first version of the non-compete was utilized from the 1980s until approximately 1999.  The second version of the non-compete agreement was utilized from approximately 1991 through approximately 2016. The third version of the non-compete was utilized from approximately 2016 through present (collectively, the "Non-Compete Agreements").

18.     In or about September of 2016, Plaintiff Cantwell-Cleary's former Sales Manager, John Bachkosky, asked Cindy Wood, the bookkeeper of Cantwell-Cleary, to provide him with

access to Cantwell-Cleary's employment records. Mr. Bachkosky made a list of the sales employees whose contracts contained signed Non-Compete Agreements, and then gave that list to Therese Cleary.

19.     The Non-Compete Checklist demonstrated that, as of September 2016, ten of the fifteen sales staff employees had Non-Compete Agreements in their employment contracts with Plaintiff Cantwell-Cleary.

20.     In or about October of 2016, subsequent to Mr. Bachkosky's resignation from Cantwell-Cleary, Therese Cleary performed her own review of the Cantwell-Cleary employee files for the existence of Non-Compete Agreements, and confirmed the accuracy of Mr. Bachkosky's list.

21.     For several years, Vincent Jr. attempted to pressure his mother, Shirley Cleary, into selling him her 50% stock interest in Plaintiff Cantwell-Cleary, which Shirley Cleary resisted. However, in February of 2018, Shirley Cleary relented and agreed to investigate a possible sale, and negotiations commenced. Those negotiations reached an impasse in June of 2018.

22.     Prior to and during the negotiations to purchase Shirley Cleary's stock interest, Vincent Jr. made a number of verbal and written threats to Shirley Cleary and other members of the Cleary family indicating that he would destroy Plaintiff Cantwell-Cleary and start his own competing company if he was not given ownership and absolute control of the corporation.  In addition, for a number of years prior to his termination, Vincent Jr. engaged in a course of disparagement against certain members of his family serving as officers, directors, or management personnel of Cantwell-Cleary, specifically his mother Shirley Cleary, his siblings William Cleary and Therese Cleary, and other Cleary family members (hereinafter collectively the "Cleary Family") informing employees of Cantwell-Cleary that the Cleary Family was incapable of

running the corporation; that they were incompetent; that they were deceitful; that they had stolen money from Vincent Jr.; that Vincent Jr. was being unduly restricted in his authority to run the corporation; that any unsuccessful ventures of the corporation were the fault of the Cleary Family and not Vincent Jr.; and that any success of the corporation was due solely to Vincent Jr.'s efforts.

23.     Similar false statements were made by Vincent Jr. to Cantwell-Cleary's third party customers prior to his termination from Cantwell-Cleary, with representations that the corporation would fail if he departed, and have continued through the present day.

24.     Upon information and belief, Vincent Jr. frequently communicated the status of these negotiations to certain key members of Plaintiff's Cantwell-Cleary's sales staff and administrative staff, and informed them that in the event he was unsuccessful in forcing the stock sale he intended to leave Cantwell-Cleary and start his own competing business.  During this same time period, Vincent Jr. also held multiple meetings with Cantwell-Cleary's sales employees and key administrative employees, and informed them that he would leave Cantwell-Cleary to run a competing business if his mother did not agree to transfer her ownership to him, and that they would each be offered positions with the competing business.

25.     In the late winter and spring of 2018, the Debtor, Vincent Jr. and these members of Cantwell Cleary's sales staff and administrative staff secretly conspired and formulated a fraudulent scheme to destroy the business operations of Cantwell-Cleary, and interfere with and ultimately usurp the business relationships held by Cantwell-Cleary with its third party customers (hereinafter the "Conspiracy").  The following components of the Conspiracy were planned and agreed to by its members, and carried out as follows:

a.     For a period of time prior to his termination, Vincent Jr. engaged in a pattern of communications with Cantwell-Cleary's third party customers whereby he falsely

informed them that Cantwell-Cleary's officers, directors, and management employees, specifically the Cleary Family, were incompetent and had wrongfully taken control of Cantwell-Cleary, and that Cantwell-Cleary's present ability to serve customer needs was solely the result of his ongoing presence and would end upon his departure;

b.      The Debtor, Vincent Jr., or a co-conspirator acting at his direction, accessed the Cantwell-Cleary employee files and removed the Non-Compete Agreements contained in the files of the sales employees participating in the Conspiracy, in an attempt to render Cantwell-Cleary unable to enforce the Non-Compete Agreements upon the resignation of those employees;

c.      While serving as a member of the Cantwell-Cleary's Board of Directors, Vincent Jr. made preparations for the formation of a new wholesale business to compete directly with Cantwell-Cleary through the sale of the same products to the same customer base and the same customers as Cantwell-Cleary, and chose to use the name "Cleary Packaging" to, in some cases, confuse Cantwell-Cleary's customers into believing that the Debtor was affiliated with, or the same corporation as, Plaintiff Cantwell-Cleary;

d.      Vincent Jr., along with the Debtor and/or co-conspirator employees, copied and/or retained, and in some cases deleted and/or converted, certain Proprietary Information maintained in electronic and paper format, while still employed by Cantwell-Cleary for the purpose of providing the Proprietary Information to the Debtor, and preventing Plaintiff Cantwell-Cleary from continuing its business relationships with its third party customers;

e.      The sales employees, in conjunction with the Debtor and Vincent Jr., induced a number of additional administrative, warehouse, and delivery employees of

Cantwell-Cleary to resign and join them and Vincent Jr. as employees of the Debtor once Vincent Jr. indicated that the Debtor was ready to commence business operations;

      f.      From May 14, 2018 through June 6, 2018, Vincent Jr. ordered Cantwell-Cleary's controller, Cindy Wood, to disburse several payments to him totaling $80,000.00 from Cantwell-Cleary's account;

      g.      On June 22, 2018, Vincent Jr. caused articles or organization to be filed for the Debtor with the Maryland State Department of Assessment and Taxation;

      i.      On July 3, 2018, sales employee and co-conspirator Kevin Barstow prepared and circulated for signature a petition among the other sales employees of Cantwell-Cleary demanding that Cantwell-Cleary's officers provide copies of their non-compete agreements by 11:00 a.m. on July 5, 2018, or they "will understand there are no such contracts of any kind between Cantwell-Cleary and those individuals.";

      h.      On Friday, July 13, 2018, the Debtor signed a lease agreement for the leasing of commercial office and warehouse space;

      i.      The following Monday, July 16, 2018, the sales employees, in coordination with the Debtor and Vincent Jr., organized a mass resignation and walk-out of sales, administrative, warehouse, and delivery employees in order to destroy Cantwell-Cleary by rendering it unable to function, and encouraged certain employees to skip deliveries or fail to perform their employment duties in exchange for new positions with the Debtor;

      j.      The Debtor and/or Vincent Jr., along with the sales employees and certain administrative employees, transferred the Proprietary Information to the Debtor, which the Debtor wrongfully and unlawfully used to injure Plaintiff Cantwell-Cleary; and

k.    The Debtor, Vincent Jr., along with the sales employees, used and continue to use the Proprietary Information for the benefit of themselves and the Debtor to contact and solicit customers of Cantwell-Cleary in violation of Maryland law and in violation of the employees' Non-Compete Agreements.

26.    The lease agreement executed by Debtor was for commercial warehouse property located at 611 Hammonds Ferry Road in Linthicum, Maryland, which is less than seven (7) miles from Plaintiff Cantwell-Cleary's main office at 7575 Washington Boulevard in Elkridge, Maryland.

27.    The Debtor and Vincent Jr. knew that the Cantwell-Cleary sales employees were bound by the Non-Compete Agreements and could not leave Cantwell-Cleary and immediately take positions with a competing business.  The Debtor and Vincent Jr. further knew that without the Plaintiff's sales staff, the Debtor, as a start-up venture, could not succeed.  In furtherance of the Conspiracy, the Debtor, Vincent Jr. or a co-conspirator at Vincent Jr.'s direction accessed the employment records of several high level sales employees, and removed and/or destroyed the Non-Compete Agreements included in their files. These employee files were locked in the office of Cantwell-Cleary employee and bookkeeper Cindy Wood, and Vincent Jr. was the only Cantwell-Cleary other employee with access to that locked office.

28.    In addition to the employee records, Plaintiff Cantwell-Cleary maintains extensive information relating to its business operations, including paper and electronic files constituting or relating to (a) lists and/or contact information of Cantwell-Cleary's customers, (b) Cantwell-Cleary's financial records and data, (c) Cantwell-Cleary's marketing strategies, (d) contracts with Cantwell-Cleary's customers, vendors or suppliers, (e) records and data relating the Cantwell-Cleary customer sales, (f) sale proposals to Cantwell-Cleary customers, (g) Cantwell-Cleary's

pricing strategies, and (h) Cantwell-Cleary employee records (hereinafter collectively the "Proprietary Information").

29.     Plaintiff Cantwell-Cleary maintains reasonable in-house procedures to safeguard access to the Proprietary Information, allowing only sales staff employees acquiring the particular customer(s), the administrative assistant of the sales employee, and high level corporate employees the right to access such information on an as needed basis.

30.     On June 15, 2018, Vincent Jr. informed his sister, Kathleen Cleary, who was a non-management employee of Cantwell-Cleary, that he was leaving Cantwell-Cleary and that he would take Cantwell-Cleary apart "brick by brick."

31.     On June 18, 2018, Shirley Cleary and William Cleary received information that Vincent Jr. had decided to leave Cantwell-Cleary to start a competing business, and his efforts to recruit members of Cantwell-Cleary sales staff to join him. As a result, that same day Shirley Cleary and William Cleary held a meeting with all members of Cantwell-Cleary's sales staff to inform them of Cantwell-Cleary's intention to terminate Vincent Jr.'s employment, to discuss Vincent Jr.'s efforts to wrongfully recruit members of the sales staff, and to assure the sales staff that the business operations of Cantwell-Cleary would not be disrupted as a result of Vincent Jr.'s termination.

32.     On the evening of June 18, 2018, Vincent Jr.'s employment with Cantwell-Cleary was terminated to prevent him from accessing Cantwell-Cleary's offices and to diminish his ability to recruit Cantwell-Cleary's employees.

33.     Upon his departure from Cantwell-Cleary, Vincent Jr. wrongfully took and/or retained certain equipment storing Cantwell-Cleary's Proprietary Information, including a desktop computer with extensive corporate files.

34.    On July 6, 2018, Vincent Jr. returned the desktop computer to Plaintiff Cantwell-Cleary, but upon belief, the Debtor and Vincent Jr. copied certain electronic files containing the Proprietary Information.  Vincent Jr. also returned a 2017 Acura that he took from Cantwell-Cleary by leaving it in the parking lot of Plaintiff's counsel, but upon inspection it was discovered that Vincent, Jr. had punctured the rear tire with a screw and had removed the spare tire from the vehicle's rear compartment.

35.    Subsequent to Vincent Jr.'s termination of his employment with Cantwell-Cleary, Vincent Jr. and the Debtor have continued their attempts to recruit Plaintiff Cantwell-Cleary's current sales employees and customers.

36.    On June 22, 2018, Vincent Jr. formed the Debtor for the purpose of competing with Plaintiff Cantwell-Cleary through the solicitation Cantwell-Cleary's existing and prospective customers, coupled with the recruitment of members of Cantwell-Cleary's sales staff to join him in the employ of the Debtor.

37.    The Debtor acts through and at the direction of Vincent Jr.

38.    The Debtor was organized for the purpose of acting as a vehicle for the perpetration of Vincent Jr.'s tortious and fraudulent conduct, which continues today.

39.    On June 28, 2018, certain key members of Plaintiff Cantwell-Cleary's sales staff organized approximately twenty-five other employees and requested that Shirley Cleary and William Cleary attend a meeting.  During this meeting, the group requested that Cantwell-Cleary officers meet with a smaller group of sales staff to discuss re-hiring Vincent Jr. The following day, William Cleary and his sister, Kathleen Cleary, met with three senior members of the sales staff and disclosed additional information regarding the basis for Vincent Jr.'s termination.

40.     As a result of the Debtor and Vincent Jr.'s effort to wrongfully solicit the sales staff of Plaintiff Cantwell-Cleary, and Vincent Jr.'s removal and/or destruction of the Non-Compete Agreements of the sales employees, a document was delivered to Shirley Cleary, Therese Cleary, and William Cleary on July 3, 2018, signed by eight (8) sales employees which demanded copies of their "Employment Contracts, Covenants, and Non-Competes" and that if such agreements were not produced, the employees would assume that they did not exist.

41.     Upon belief, the Debtor and Vincent Jr. were the driving force behind the formulation and delivery of the Employee Demand, having informed those Cantwell-Cleary employees that they should request this information prior to joining the Debtor, and knowing that Vincent Jr. had previously removed the Non-Compete Agreements from the employment contracts of the sales staff.

42.     Despite Plaintiff Cantwell-Cleary's efforts to dissuade the Debtor and Vincent Jr. from encouraging current sales employees breach their Non-Compete Agreements and join him in the employ of the Debtor, the Debtor and Vincent Jr. continued to compete with the Debtor, steal its customers and employees, and disparage Plaintiff's reputation.

43.     On July 16, 2018, five (5) sales staff employees who were bound by Non-Compete Agreements, Dennis Ibbott, Brian Reilly, Kevin DeGregory, Roland Phillip, and Kevin Barstow, resigned from Cantwell-Cleary, and were hired by the Debtor to serve in sales positions on behalf of the Debtor.  On or about July 30, 2018, after returning from an out of state trip, a sixth sales employee bound by a Non-Compete Agreement, Timothy Ingram, resigned from Cantwell-Cleary and took a similar sales positions with the Debtor that same day.

44.     In furtherance of the Conspiracy, and despite being informed that he was not to make use of Proprietary Information belonging to Plaintiff Cantwell-Cleary, the Debtor and

Vincent Jr. and their co-conspirators copied and retained such information, and continued to use it along with other former Cantwell-Cleary employees in the Debtor's effort to compete with Cantwell-Cleary and destroy its business operations.

45.     On or about July 20, 2018, Cantwell-Cleary filed the Circuit Court Action against the Debtor and Vincent Jr. for intentional interference with contracts, violations of the Maryland Uniform Trade Secrets Act, tortious interference with business relations, negligence (breach of fiduciary duty and duty of loyalty), constructive fraud, and conspiracy.

46.     Plaintiff Cantwell-Cleary's claims were tried by a jury between November 2, 2020 and November 19, 2020.  The jury rendered verdict against the Debtor for intentional interference with contracts and tortious interference with business relations, awarding judgment in favor of the Plaintiff Cantwell-Cleary and against the Debtor in the amount of $4,715,764.98.  A copy of the verdict sheet is attached hereto and incorporated herein as **Exhibit A**.

47.     Prior to deliberations, the Court provided detailed instructions to the jury on the elements of each of Cantwell-Cleary's claims, including its claims for Intentional Interference with Contracts and Tortious Interference with Business Relations. A copy of the Jury Instructions is attached hereto and incorporated herein as **Exhibit B.**

## Count I
## Determination of Dischargeability of Debt Pursuant
## to 11 U.S.C. § 523(a)(2)

48.     Plaintiff incorporates paragraphs 1 - 47 as set forth herein, and states that 11 U.S.C. § 1192(2) provides that a subchapter V debtor may not be discharged from debts of the kind specified in section 523(a).

49.     Section 523(a)(2)(A) excludes from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false

pretenses, a false representation, or actual fraud….”

50.     The Debtor and its sole owner, Vincent Jr., designed and perpetrated the Conspiracy, which involved a course of deceit, misrepresentation, and concealment, all for the purpose of sabotaging Cantwell-Cleary's business operations.

51.     Plaintiff Cantwell-Cleary was party to certain employment contracts with members of its sales staff that contain Non-Compete Agreements.

52.     The Non-Compete Agreements are a valid and enforceable component of each of these employment contracts, and prevent each of the sales employees for a period of one (1) year subsequent to termination of their employment with Cantwell-Cleary from taking a position with a competitor of Cantwell-Cleary within a seventy-five (75) miles radius of Cantwell-Cleary's office, and/or soliciting customers of Cantwell-Cleary.

53.     The Debtor and Vincent Jr. were aware that the employment contracts of Cantwell-Cleary's sale employees included Non-Compete Agreements, as the Debtor and/or Vincent Jr. took measures to wrongfully conceal, remove and/or destroy them from the employment files of the sales employees prior to his termination from Cantwell-Cleary.

54.     Despite this knowledge, the Debtor and Vincent Jr. recruited and induced six (6) of those sales employees of Cantwell-Cleary bound by Non-Compete Agreements to join him in the employ of the Debtor and breach their Non-Compete Agreements through solicitation of Cantwell-Cleary's third party customers.

55.     In addition, the version of the Non-Compete Agreement for five (5) of the six (6) sales employees precluded employment with a competitor with seventy-five (75) miles of Cantwell-Cleary's offices for one (1) year.   The Debtor induced the employees to breach their Non-Compete Agreements and hired them for similar sales positions upon their resignation,

despite the Debtor and Vincent Jr.'s knowledge that doing so was wrongful and a fraud upon Plaintiff Cantwell-Cleary.

56.     Vincent Jr.'s inducement of the six (6) sales employees to breach their employments contracts was accomplished by wrongful means, as he concealed, removed and/or destroyed the Non-Compete Agreements included in their respective employment contracts in an effort to prevent Cantwell-Cleary from seeking enforcement of their restrictive provisions.

57.     The Debtor and Vincent Jr.'s concealed from the Plaintiff their plan to form a new competing business, and concealed the acts taken in furtherance of the Conspiracy.

58.     The Debtor and Vincent Jr.'s conduct was undertaken for the purpose of procuring the breach of the employment contracts of Plaintiff Cantwell-Cleary's sales staff through violation of the Non-Compete Agreements, and was undertaken with the fraudulent, willful and malicious intent to destroy the business of Cantwell-Cleary.

59.     As a result of the Debtor and Vincent Jr.'s fraudulent conduct, several highly valuable third party customers ceased doing business with Cantwell Cleary, and several of Cantwell-Cleary's critical sales employees resigned from their positions with Cantwell-Cleary and joined the Debtor.

60.     As a result of the Debtor and Vincent Jr.'s actions, Plaintiff Cantwell-Cleary has suffered significant damage, as they caused Plaintiff's sales employees to terminate their employment contracts, breach their Non-Compete Agreements, and join the Debtor to compete with the Plaintiffs by soliciting Plaintiff Cantwell-Cleary's employees and customers.

61.     In addition, Vincent Jr. has caused multiple third party customers to cease their business relationships with Plaintiff Cantwell-Cleary and instead engage the Debtor through use of Plaintiff Cantwell-Cleary's Proprietary Information, and through Vincent Jr.'s removal and/or

destruction of the sales employees' Non-Compete Agreements in an attempt to insulate those employees from liability as part of a Conspiracy to redirect all of Plaintiff Cantwell-Cleary's business to the Debtor.

62.     Furthermore, the Debtor and Vincent Jr. have engaged in a continuing pattern of disparagement against the Plaintiff Cantwell-Cleary by falsely informing Cantwell-Cleary's third party customers that Cantwell-Cleary is no longer able to satisfy customer needs and orders; that Cantwell-Cleary's remaining officers and management employees are deceitful and incompetent; that they are incapable of running the corporation; that Cantwell-Cleary is no longer an industry leader; that Cantwell-Cleary has stolen money from Vincent, Jr.; that any success of the Plaintiff was due solely to Vincent Jr.'s efforts and would cease upon his departure; and that engaging in business with Cantwell-Cleary is a high risk venture because it will soon be out of business.

63.     The Debtor and Vincent Jr.'s act of disparaging Plaintiff Cantwell-Cleary to its third party customers is unlawful, as the statements made by the Debtor and Vincent Jr. were and are knowingly false; they knew the statements were false; and those statements were made in furtherance of the Conspiracy to destroy Cantwell-Cleary's business.

64.     The Debtor and Vincent Jr.'s false statements to Cantwell-Cleary's highly valued third party customers were intentional, willful, and without justifiable cause, and were made for the improper purpose of damaging Cantwell-Cleary by inducing those third party customers to cease their business relationships with Cantwell-Cleary.

65.     Vincent Jr. is the sole member of the Debtor.

66.     The Debtor acts through and at the direction of Vincent Jr.

67.     The Debtor was organized for the purpose of acting as a vehicle for the perpetration of the foregoing fraudulent and tortious conduct, which is on-going.

68.     As a result of the Debtor's prior and continuing conduct, Plaintiff Cantwell-Cleary has suffered, and will further suffer, substantial damage in the amount of no less than $4,715,764.98.

WHEREFORE, Plaintiff Cantwell-Cleary respectfully requests that the judgment in favor of Cantwell-Cleary rendered by the Circuit Court of Maryland for Anne Arundel County on November 19, 2020, in Case No. C-02-CV-18-002135, in the amount of $4,715,764.98, plus interest, fees and costs, be declared non-dischargeable, and that the Court grant such other and further relief as is just and appropriate.

**Count II**
**Determination of Dischargeability of Debt Pursuant**
**to 11 U.S.C. § 523(a)(6)**

69.     Plaintiff incorporates paragraphs 1 - 68 as set forth herein, and states that 11 U.S.C. § 1192(2) provides that a subchapter V debtor may not be discharged from debts of the kind specified in section 523(a).

70.     Section 523(a)(6) excludes from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

71.     The Debtor and Vincent Jr., along with others, engaged in Conspiracy whereby they planned to destroy the business operations of the Plaintiff Cantwell-Cleary and usurp the business relationships held by Cantwell-Cleary with its third party customers.  Among others, the following components of the Conspiracy were planned and agreed to by its members, and carried out as follows:

a.      For a period of time prior to his termination, Vincent Jr. engaged in a pattern of communications with Cantwell-Cleary's third party customers whereby he falsely informed them that Cantwell-Cleary's officers, directors, and management employees,

specifically the Cleary Family, were incompetent and had wrongfully taken control of Cantwell-Cleary, and that Cantwell-Cleary's present ability to serve customer needs was solely the result of his ongoing presence and would end upon his departure;

b.      The Debtor, Vincent Jr., or a co-conspirator acting at his direction, accessed the Cantwell-Cleary employee files and removed the Non-Compete Agreements contained in the files of the sales employees participating in the Conspiracy, in an attempt to render Cantwell-Cleary unable to enforce the Non-Compete Agreements upon the resignation of those employees;

c.      While serving as a member of the Cantwell-Cleary's Board of Directors, Vincent Jr. made preparations for the formation of a new wholesale business to compete directly with Cantwell-Cleary through the sale of the same products to the same customer base and the same customers as Cantwell-Cleary, and chose to use the name "Cleary Packaging" to, in some cases, confuse Cantwell-Cleary's customers into believing that the Debtor was affiliated with, or the same corporation as, Plaintiff Cantwell-Cleary;

d.       Vincent Jr., along with the Debtor and/or co-conspirator employees, copied and/or retained, and in some cases deleted and/or converted, certain   Proprietary Information maintained in electronic and paper format, while still employed by Cantwell-Cleary for the purpose of providing the Proprietary Information to the Debtor, and preventing Plaintiff Cantwell-Cleary from continuing its business relationships with its third party customers;

e.      The sales employees, in conjunction with the Debtor and Vincent Jr., induced a number of additional administrative, warehouse, and delivery employees of

Cantwell-Cleary to resign and join them and Vincent Jr. as employees of the Debtor once Vincent Jr. indicated that the Debtor was ready to commence business operations;

f.      From May 14, 2018 through June 6, 2018, Vincent Jr. ordered Cantwell-Cleary's controller, Cindy Wood, to disburse several payments to him totaling $80,000.00 from Cantwell-Cleary's account;

g.      On June 22, 2018, Vincent Jr. caused articles or organization to be filed for the Debtor with the Maryland State Department of Assessment and Taxation;

i.      On July 3, 2018, sales employee and co-conspirator Kevin Barstow prepared and circulated for signature a petition among the other sales employees of Cantwell-Cleary demanding that Cantwell-Cleary's officers provide copies of their non-compete agreements by 11:00 a.m. on July 5, 2018, or they "will understand there are no such contracts of any kind between Cantwell-Cleary and those individuals.";

h.      On Friday, July 13, 2018, the Debtor signed a lease agreement for the leasing of commercial office and warehouse space;

i.      The following Monday, July 16, 2018, the sales employees, in coordination with the Debtor and Vincent Jr., organized a mass resignation and walk-out of sales, administrative, warehouse, and delivery employees in order to destroy Cantwell-Cleary by rendering it unable to function, and encouraged certain employees to skip deliveries or fail to perform their employment duties in exchange for new positions with the Debtor;

j.      The Debtor and/or Vincent Jr., along with the sales employees and certain administrative employees, transferred the Proprietary Information to the Debtor, which the Debtor wrongfully and unlawfully used to injure Plaintiff Cantwell-Cleary; and

k.    The Debtor, Vincent Jr., along with the sales employees, used and continue to use the Proprietary Information for the benefit of themselves and the Debtor to contact and solicit customers of Cantwell-Cleary in violation of Maryland law and in violation of the employees' Non-Compete Agreements.

72.    Cantwell-Cleary has expended significant time and resources developing its business and securing its Proprietary Information, including proprietary pricing formulas and marketing plans for it products, relationship information with its existing customers, and other information which allows the Plaintiff to hold a distinct advantage over its competitors.

73.    Plaintiff's Proprietary Information is not known to or readily ascertainable by Cantwell-Cleary's competitors.

74.    The Proprietary Information is subject to strict in-house safeguards whereby only sales staff employees acquiring or pursuing the particular customer(s), and high level corporate employees, are given access on an as needed basis to the Proprietary Information.

75.    Vincent Jr. acquired the Proprietary Information under circumstances giving rise to a duty to maintain its secrecy, as he was Plaintiff's former President and CEO, and was a high level employee and member of the Board of Directors at the time he acquired, retained, and misappropriated the Proprietary Information.

76.    The Debtor has and continues to misappropriate the Proprietary Information for the purpose of competing with Plaintiff Cantwell-Cleary, and has and continues to wrongfully acquiring corporate opportunities belonging to Cantwell-Cleary through, among other things, misappropriation of Plaintiff's Proprietary Information.

77.    Additionally, Vincent Jr. and the Debtor have and continue to engage in a continuing pattern of disparagement against the Plaintiff by falsely informing Cantwell-Cleary's

third party customers that Cantwell-Cleary is no longer able to satisfy customer needs and orders; that Cantwell-Cleary's remaining officers and management employees are deceitful and incompetent; that they are incapable of running the corporation; that Cantwell-Cleary is no longer an industry leader; and that engaging in business with Cantwell-Cleary is a high risk venture because it will soon be out of business.

78.    The Debtor and Vincent Jr.'s act of disparaging Plaintiff Cantwell-Cleary to its third party customers is unlawful, as the statements made by Vincent Jr. were and are false, Vincent Jr. knew the statements were false, and those statements were made in furtherance of the Conspiracy to destroy Cantwell-Cleary's business.

79.    The Debtor and Vincent Jr.'s false statements to Cantwell-Cleary's highly valued third party customers were intentional, willful, wanton, malicious and without justifiable cause, and were made for the improper purpose of damaging Cantwell-Cleary by inducing those third party customers to cease their business relationships with Cantwell-Cleary.

80.    In addition to the foregoing, the Debtor's misappropriation of Plaintiff Cantwell-Cleary's Proprietary Information; the Debtor's unlawful, willful, wanton and malicious acts to induce customers to cease their business relationships with Plaintiff Cantwell-Cleary and instead conduct business with the Debtor; the Debtor's poaching and inducement of Plaintiff's employees and sales staff to breach the Non-Compete Agreements with the Plaintiff; and to solicit and take Plaintiff's customers; constitutes a wrongful conversion, which was knowing and deliberate.

81.    The Debtor knew, and indeed intended, that the consequences of its wrongful, willful, wanton and malicious acts would cause economic injury to the Plaintiff.

82.    The Debtor's acts, as set forth above, were intended to be willful, wanton and malicious, and are in-fact willful and malicious, and have caused and continue to cause significant damages to the Plaintiff.

83.    Vincent Jr. is the sole member of the Debtor.

84.    The Debtor acts through and at the direction of Vincent Jr.

85.    The Debtor was organized for the purpose of acting as a vehicle for the perpetration of the foregoing fraudulent and tortious conduct, which is on-going.

86.    On November 19, 2020, the jury entered judgment in favor of the Plaintiff and against the Debtor for intentional interference with contracts in the amount of $2,357,882.49.

87.    On November 19, 2020, the jury entered judgment in favor of the Plaintiff and against the Debtor for tortious interference with business relations in the amount of $2,357,882.49.

88.    As a result of the Debtor's prior and continuing conduct, Plaintiff Cantwell-Cleary has suffered, and will further suffer, substantial damage in the amount of no less than $4,715,764.98.

**89.    The Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court.**

WHEREFORE, Plaintiff Cantwell-Cleary respectfully requests that the judgment in favor of Cantwell-Cleary rendered by the Circuit Court of Maryland for Anne Arundel County on November 19, 2020, in Case No. C-02-CV-18-002135, in the amount of $4,715,764.98, plus interest, fees and costs, be declared non-dischargeable, and that the Court grant such other and further relief as is just and appropriate.

Date:  March 2, 2021

Respectfully submitted,

MCNAMEE, HOSEA, JERNIGAN, KIM,
GREENAN & LYNCH, P.A.

/s/Steven L. Goldberg
Steven L. Goldberg (Bar No. 28089)
John P. Lynch (Bar No. 07433)
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
T: 301-441-2420
sgoldberg@mhlawyers.com
jlynch@mhlawyers.com
*Attorneys for Plaintiff Cantwell-Cleary Co. Inc.*