Entered: June 29th, 2021
Signed: June 29th, 2021



MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Cleary Packaging LLC, | * | Case No. 21-10765-MMH |
| Debtor. | * | Chapter 11 (Subchapter V) |
| Cantwell-Cleary Co., Inc., | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 21-00056-MMH |
| Cleary Packaging, LLC, | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Cantwell-Cleary Co., Inc. (the "Plaintiff") filed this adversary proceeding seeking a determination that its debt against the above-captioned debtor, Cleary Packaging, LLC (the "Defendant"), is excepted from discharge under section 523(a) of the Bankruptcy Code.[1] The Defendant has filed a motion to dismiss the Complaint (the "Motion") for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure. ECF 6.

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

The Defendant argues that section 523(a) does not apply to an entity debtor under subchapter V of chapter 11 of the Code ("Subchapter V").

As explained below, the issue concerning the application of section 523 of the Code in a Subchapter V case arises only if the Subchapter V debtor cannot confirm a consensual plan under section 1191(a) of the Code. The parties nonetheless ask this Court to resolve the issue prior to confirmation, anticipating that a consensual plan is not possible in this particular case. Indeed, at the May 13, 2021, hearing in this proceeding, the parties presented the issue as a gating matter to the Defendant's restructuring alternatives under any Subchapter V plan.

For the reasons set forth below, the Court agrees with the Defendant that the section 523(a) exceptions to discharge do not apply to the discharge of a Subchapter V entity debtor. Because the Complaint is legally insufficient to state a claim for excepting the Plaintiff's debt from discharge, it fails to state a claim under Civil Rule 12(b)(6), and the Court will dismiss it.[2]

## I.     Relevant Background

The Defendant has operated in the packaging industry since 2018. The Defendant's founder and sole owner is Mr. Vincent Cleary, who previously worked for the Plaintiff in a variety of positions. The Plaintiff also operates in the packaging industry and appears to be or to have been owned, at least at some point in time, by Mr. Cleary's family. Mr. Cleary's departure from the Plaintiff's employ and his subsequent organization of the Defendant resulted in state court litigation. The Plaintiff secured a judgment against the Defendant and Mr. Cleary in the amount of $4,715,764.98.

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss under Rule 12(b)(6) a complaint must plead facts that surpass speculation and "'state a claim to relief that is plausible on its face'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hall v. Greystar Management Servs., L.P.*, 637 Fed. App'x 93, 99 (4th Cir. 2016) (a Rule 12(b)(6) motion "tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; 'it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'") (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

2

On February 7, 2021, the Defendant filed a petition under chapter 11 of the Code and elected to proceed under Subchapter V. Shortly thereafter, the Plaintiff commenced this adversary proceeding seeking to have its debt against the Defendant deemed nondischargeable under sections 523(a)(2) and (a)(6) of the Code. ECF 1. Based on its judgment, the Plaintiff filed a dispositive motion, seeking summary judgment on Count II of the Complaint (nondischargeability under section 523(a)(6)). ECF 3. The Defendant filed the Motion and an opposition to the Plaintiff's Motion for Summary Judgment. ECF 6, 7. The Plaintiff then filed an opposition to the Motion. ECF 11, 12. The Court set all matters for hearing on May 13, 2021.

## II.     Jurisdiction and Legal Standards

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a) and its Local Rule 402, the United States District Court for the District of Maryland has referred the bankruptcy case and related adversary proceeding to the Court. This proceeding is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2). The Court has constitutional authority to enter final orders in this proceeding.

The relief requested by the Complaint is of particular import to the parties because it involves the proper scope of the Defendant's discharge in its Subchapter V case. The bankruptcy discharge is a hallmark of U.S. bankruptcy law. It provides a corporate debtor with a new financial structure and, in that regard, a financial fresh start, which is one of the primary policy objectives underlying the Code. *See, e.g., Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007) (noting that "the very purpose of bankruptcy is to discharge or restructure the debt that has caused the bankruptcy"); *In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 361 (Bankr. D.N.J. 2020) (observing that "it is indisputable that a 'primary goal of Chapter 11 is to promote the restructuring of the debtor's obligations so as to preserve the business and avoid liquidation'")

3

(internal citations omitted).³ To achieve that end, the Code broadly defines the terms "debt" and "claim" so that, "[g]enerally, 'all legal obligations of the debtor, no matter how remote or contingent,' are potentially dischargeable in bankruptcy." *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (citations omitted); 11 U.S.C. §§ 101(5), (12).

The bankruptcy discharge is not, however, absolute. It is limited by, among others, sections 727(a), 1141, 1192, 1228, 1328, and 523(a) of the Code. The Complaint asserts that sections 523(a)(2) and (a)(6) limit the Defendant's discharge in its Subchapter V case. Those sections of Code provide, in pertinent part,

> A discharge under section … 1192 … of this title does not discharge an individual debtor from any debt—
> …
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
> …
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §§ 523(a)(2)(A), (a)(6).

Notably the introductory language to sections 523(a)(2) and (a)(6) speaks only of an "individual debtor." Section 523(a) itself does not purport to apply to entity debtors, such as the Defendant. The question raised by this proceeding is whether the language "of the kind specified in section 523(a) of this title," included in section 1192(2) of the Code,⁴ extends the scope of

---

³ *See also, e.g., Ackles v. A.H. Robins Co., Inc. (In re A.H. Robins Co., Inc.)*, 59 B.R. 99, 104–105 (Bankr. E.D. Va. 1986) (recognizing the broad discharge provided corporate debtors and explaining that "[t]he Court cannot say that Congress' provision for a broader discharge for corporations than for individuals is not rationally related to a legitimate governmental interest. Indeed, the function of the discharge provision takes into account the unique needs of a corporate debtor and it encourages not only continued operation, but participation from equity holders who, but for dischargeability of all debts in reorganization, may choose to allow liquidation of the corporation.").

⁴ Section 1192 states,
> If the plan of the debtor is confirmed under section 1191(b) of this title, as soon as practicable after completion by the debtor of all payments due within the first 3 years of the plan, or such longer period not

section 523(a) to entity debtors in Subchapter V cases in which the plan is confirmed under section 1191(b).

### III. Analysis

Subchapter V focuses on smaller debtors engaged in commercial or business activities, which may include individuals who meet the definition of "debtor" set forth in section 1182 of the Code.[5] Congress enacted Subchapter V, in part, to address aspects of a traditional chapter 11 case that arguably do not work as effectively or efficiently as they could for small businesses.[6] For example, a traditional chapter 11 case often is too expensive and too lengthy, and it fails to provide sufficient restructuring flexibility for small businesses.[7] Subchapter V thus modifies the traditional

---

to exceed 5 years as the court may fix, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt—
(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or
(2) of the kind specified in section 523(a) of this title.
11 U.S.C. § 1192.

[5] Section 1182(1) defines the term debtor to mean, in part,
[S]ubject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor; …
11 U.S.C. § 1182.

[6] For example, in his public comments describing the purpose of the act, one legislator noted:
"The Small Business Reorganization Act is a tremendous step forward in streamlining bankruptcy procedures. By reducing unnecessary procedural burdens, enhancing oversight and increasing the debtors' ability to negotiate, we will ensure quick and successful reorganization and provide small businesses the ability to restructure in a way that meets their needs. I thank my colleagues for their work on the introduction of this bill and urge for its timely consideration in both the House and Senate," Rep. Marino said.
*Small Business Reorganization Act*, 38-1 ABI J. 8 (January 2019).

[7] As one witness testified during Congressional hearings on the bill:
Chapter 11 doesn't work for small and medium-sized businesses because the Bankruptcy Code (a) places unrealistic and artificial deadlines on small- and medium-sized businesses, which do not give these companies an opportunity to restructure; (b) imposes substantial and costly disclosure and reporting requirements on these companies; (c) does not provide any tools that can help small businesses—whose owners may be unsophisticated in finance, business plans, or restructuring issues—create and implement an effective reorganization plan; and (d) makes it difficult for a small business owner to maintain an ownership interest in the business under the current Chapter 11.

chapter 11 platform to provide a more tailored and streamlined restructuring process for small businesses.

To achieve that end, the language of various provisions in Subchapter V draws not only on provisions in chapter 11, but also those in chapters 12 and 13 of the Code. For example, the language of section 1192 at issue in this proceeding is also in sections 1228 and 1328 of the Code. Notably, only a few courts have addressed this language and whether the exceptions to discharge in section 523(a) apply to entity debtors in either chapter 12 or Subchapter V cases.

As further explained below, the Court finds the reasoning of Judge Ruark in *Gaske v. Satellite Restaurants Inc. Crabcake Factory USA (In re Satellite Restaurants Inc. Crabcake Factory USA)*, 626 B.R. 871 (Bankr. D. Md. 2021), not only most persuasive on this issue but also most consistent with the historical structure of the Code and the core objectives of chapter 11.[8]

### A. The Plain Language of the Code

In *Satellite Restaurants*, Judge Ruark extensively reviewed the language of the statute and its meaning in a Subchapter V case. She focused on the phrase "of a kind specified in section 523(a)" in section 1192, and the addition of "1192" to section 523(a) at the time of Subchapter V's enactment. 626 B.R. at 874–878. Specifically, the qualifying language to all debts listed in section 523(a) now reads, "[a] discharge under section 727, 1141, *1192*, 1228(a), 1228(b),

---

Testimony of Robert J. Keach, Esq. on behalf of the American Bankruptcy Institute, Hearing on Oversight of Bankruptcy Law & Legislative Proposals, available at https://docs.house.gov/meetings/JU/JU05/20190625/109657/HHRG-116-JU05-Wstate-KeachR-20190625.pdf.

[8] As this Court has explained, "Subchapter V starts with chapter 11 as its base and then draws on the structure of chapter 12, certain elements of chapter 13, and the recommendations of the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 and the National Bankruptcy Conference. *See* Michael C. Blackmon, *Revising the Debt Limit for 'Small Business Debtors': The Legislative Half-Measure of the Small Business Reorganization Act*, 14 Brook. J. Corp. Fin. & Com. L. 339, 344–45 (2020) (summarizing the history of SBRA and some of the work of the American Bankruptcy Institute and the National Bankruptcy Conference that underlies the act)." *In re Trepetin*, 617 B.R. 841, 848 (Bankr. D. Md. 2020).

or 1328(b) of this title does not discharge an individual debtor from any debt ….." 11 U.S.C. § 523(a) (emphasis added).

Judge Ruark's focus on the statutory language is an appropriate starting point for the analysis. Logically, the addition of 1192 to section 532(a) would not be necessary if Congress intended the phrase "of a kind specified in section 523(a)" in section 1192 to apply to the debts of *all* debtors under Subchapter V. Indeed, if Congress had added only the new language of section 1192(2), that provision arguably would have been fully operative on a stand-alone basis and applicable to all debtors. But that is not what Congress chose to do.

Rather, Congress also added section 1192 to the qualifying language of section 523(a), and the only function that addition serves is to limit the application of section 523(a) to individual debtors in Subchapter V cases. This is not simply the logical reading of the statute but also, as thoughtfully explained by Judge Ruark in *Satellite Restaurants*, it is the result mandated by common principles of statutory interpretation. 626 B.R. at 875–867. The Court will not reiterate Judge Ruark's statutory interpretation analysis herein, but incorporates it by reference in support of this decision.

Based on the foregoing, the Court finds that the Code, read holistically and in accordance with common principles of statutory interpretation, limits the application of section 523 in Subchapter V cases to individual debtors.

The Court acknowledges that two courts have read language similar to that found in section 1192 differently in the context of chapter 12 cases. This Court agrees with Judge Ruark

that those chapter 12 cases are distinguishable from business cases under Subchapter V.[9] The Court also observes that those decisions are not binding on this Court or in Subchapter V cases.[10]

### B. Historical Context and Legislative Support

Similar to Judge Ruark in *Satellite Restaurants*, the Court concludes that the necessary analysis ends here. The plain language of the statute supports the Defendant's position, and the Court need not resort to legislative history or additional factors. Nevertheless, for the reasons explained by Judge Ruark, the Court agrees that limiting section 523 to individual debtors in Subchapter V cases aligns with the legislative history and underlying objectives of Subchapter V. 626 B.R. at 878–879; *see also* Hon. Paul W. Bonapfel, *Guide to the Small Business Reorganization Act of 2019* at 79–83 (July 2020).[11] The Court also observes that such an approach accords with the historical structure and objectives of the Code.

---

[9] *See Southwest Ga. Farm Credit, Aca v. Breezy Ridge Farms, Inc. (In re Breezy Ridge Farms, Inc.)*, No. 08-12038-JDW, 2009 WL 1514671, at *1 (Bankr. M.D. Ga. May 29, 2009); *New Venture P'ship v. JRB Consol., Inc. (In re JRB Consol., Inc.)*, 188 B.R. 373 (Bankr. W.D. Tex. 1995). For decisions distinguishing these two chapter 12 cases in one way or another from cases under chapter 11, see *United States ex rel. Minge v. Hawker Beechcraft, Inc. (In re Hawker Beechcraft, Inc.)*, 515 B.R. 416, 430 (S.D.N.Y. 2014); *Satellite Restaurants*, 626 B.R. at 877.
    The Court is mindful of the arguable similarities between chapter 12 and Subchapter V, including the language of sections 1228 and 1192(2). Nonetheless, particularly in light of the addition of 1192 to section 523(a), the Court notes at least two important differences between chapter 12 and Subchapter V, namely, (i) Subchapter V is structured primarily as a business entity alternative, applying to a much broader array of corporations than those eligible to file for chapter 12 (as chapter 12 is focused on "family farmers" and "family fisherman"); and (ii) Subchapter V incorporates section 1141(d) in the context of a consensual plan, which distinguishes between individual and corporate debtor discharges. *See also infra* note 21.
    As the court in *Hawker Beechcraft* observed, "The lack of such distinction within Chapter 12 considered in conjunction with the narrowly circumscribed type of corporation that may be a Chapter 12 debtor renders analogy between the two discharge provisions unpersuasive." 515 B.R. at 431. The Court thus finds no reason to depart from the plain meaning of the statutory language at issue.

[10] The Court makes no determinations herein regarding the language of, and interplay between, sections 523 and 1228 of the Code. The Court notes only that the plain language of those provisions could support a result different than that reached by the courts in *Breezy Ridge* and *JRB Consolidated*.

[11] A copy of this guide is available at https://www.ganb.uscourts.gov/sites/default/files/sbra_guide_pwb.pdf (last visited on June 26, 2021).

1. *History of the Corporate Debtor Discharge*

At the time of the Code's enactment in 1978, section 523(a) of the Code listed nine exceptions to discharge.[12] 11 U.S.C. § 523 (1978). The qualifying language of that section referenced only sections 727, 1141, and 1328 of the Code; chapter 12 was not yet enacted.[13] *Id*.

The legislative history to the Code shows that Congress considered applying exceptions to discharge to corporate debtors, but expressly rejected that approach.[14] *See, e.g.,* Ralph Brubaker, *Taking Exception to the New Corporate Discharge Exceptions*, 13 AM. BANKR. INST. L. REV. 757, 764–66 and notes 46–49 (2005) (explaining legislative history to chapter 11 discharge). This rejection is notable because the Bankruptcy Act of 1898 included exceptions to discharge for certain corporate debtors.[15] As Professor Brubaker has explained,

---

[12] The legislative history to the Code explains the general purpose of the individual debtor and business debtor provisions. H.R. REP. 95-595, at 6, 1978 U.S.C.C.A.N. 5963, 5968. It also states that the provisions in chapters 1, 3, and 5 of the Code may apply to both individual debtor and business debtor cases, but notes that "[s]pecific provisions do have more frequent applicability in consumer or business cases, however, and others are limited only to use by individuals." H.R. REP. 95-595, at 6, 1978 U.S.C.C.A.N. 5963, 5968.

In addition, Kenneth N. Klee, who worked extensively on the 1978 Code, co-authored an articled shortly after the Code's enactment concerning the individual debtor provisions of the Code. *See* Marc S. Cohen and Kenneth N. Klee, *Caveat Creditor: The Consumer Debtor under the Bankruptcy Code*, 58 N.C. L. Rev. 681 (1980). In that article, the authors discuss nondischargeable debts in the context of the individual debtor. *Id.* at 707–717. The authors explain that "[a]lthough the discharge sometimes releases the individual debtor from legal liability for all debts, certain kinds of debt are excepted from discharge." *Id.* at 707. They further note that "[d]ebts of the kind specified in § 523(a) will also be excepted from discharge in a Chapter 11 case concerning an individual, … and from a 'hardship' discharge in a case under Chapter 13." *Id.* at 707, note 259.

[13] Chapter 12 was added to the Code in 1986. Pub. L. No. 99–554 (HR 5316), 100 Stat 3088 (1986). In addition, section 1141(d)(6), which makes a limited category of debt nondischargeable in a corporation's chapter 11 case, was not part of the Code in 1978. That provision was added by the 2005 amendments, and it is discussed further *infra* note 17. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) Pub. L. No. 109–8, 119 Stat. 23 (2005).

[14] The Court recognizes that the Defendant is a limited liability company. The Code defines "corporation," however, to include an "unincorporated company or association." 11 U.S.C. § 101(9). Consequently, "[a] limited liability company is a corporation within the meaning of § 101(9)." *Crocker v. Matthews (In re Matthews)*, 599 B.R. 838, 864 (Bankr. D. Md. 2019) (internal citations omitted). *See also Williams v. Sears Holding Co.*, No. CV 06-PWG-455-M, 2008 WL 11424255, at *4 (N.D. Ala. Mar. 28, 2008) (explaining the different treatment accorded individual and corporate debtors under the Code and noting that "[t]he Fourth Circuit Court of Appeals has recognized this distinction and determined that it is constitutionally sound.") (citing *Beard v. A.H. Robins Co.*, 828 F.2d 1029, 1031-32 (4th Cir. 1987)).

[15] As one court stated, "[a] salient, critical aspect of Chapter X Reorganization of a corporation is the discharge of demands of every kind or character, executory and contingent, due or to mature in the future. City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937). Significantly, the exceptions from discharge in bankruptcy of certain classes of s 17 of the Act, 11 U.S.C.A. s 35, are inconsistent with the provisions of Chapter X and, accordingly, do not apply in a Chapter X reorganization proceeding. See: Annotation, 135 A.L.R.

> The corporate discharge exceptions in chapter XI—particularly the discharge exception for fraud debts—posed a substantial impediment to the ability of certain debtors to reorganize under that chapter. … In the drafting of the Bankruptcy Code, with the resulting consolidation of reorganization provisions into a unitary reorganization process, the differing scope of the corporate discharge as between chapters X and XI received careful scrutiny. And the decision to enact a corporate discharge even *more* comprehensive than that available under chapter X was informed by the chapter XI experience and the considered judgment that *any* corporate discharge exception "would leave an undesirable uncertainty surrounding reorganizations that is unacceptable."

Brubaker, 13 AM. BANKR. INST. L. REV. at 764–66 (internal notes and citations omitted).[16]

Thus, the 1978 Code represented an intentional and decisive change by Congress with respect to the scope of a corporate debtor's discharge.

Since that time, courts have strenuously protected a corporate debtor's discharge. "'[A] corporate debtor's discharge in a chapter 11 case is generally all encompassing.'. . . Exceptions to discharge are limited in chapter 11 cases involving corporate debtors." *Mallinckrodt PLC v. City of Rockford (In re Mallinckrodt PLC)*, No. 20-12522 (JTD), 2021 WL 2460227, at *4 (Bankr. D. Del. June 16, 2021).

The only expressed categorical exceptions to a corporate debtor's discharge now in the Code at section 1141(d)(6) required approximately eight years to become law.[17] As such, the

---

1422, 1424." *Dietrich Corp. v. King Res. Co.*, 583 F.2d 1143, 1150 (10th Cir. 1978). Notably, the commentary cited by the court reads, "And in Chapter XI of the act, relating to arrangements, defined as any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms, it is provided, in 11 U.S.C.A. § 771, that the confirmation of an arrangement shall discharge a debtor from all his unsecured debts and liabilities provided for by the arrangement, excluding such debts as, under § 35 (previously set out in this annotation), are not dischargeable." *Discharge in corporate reorganization proceedings as subject to exceptions because of character or nature of original claim*, 135 A.L.R. 1422 (originally published in 1941).

As explained by Professor Brubaker and as is evident from the language of the Code in 1978, Congress expressly adopted the general Chapter X approach to discharge for *all* corporate debtors under the Code. *See, e.g.*, Brubaker, 13 AM. BANKR. INST. L. REV. at 764–66.

[16] *See also In re Exide Techs.*, 601 B.R. 271, 280–81 (Bankr. D. Del. 2019), *aff'd*, 613 B.R. 79 (D. Del. 2020) (in rejecting the application of section 523(a)(7) to corporate debtors, the Court explained, "Congress initially intended that all nineteen of the § 523(a) discharge exceptions for individual debtors, including § 523(a)(7), should also apply to corporate debtors. However, based on public policy considerations, Congress ultimately limited the scope of the discharge exceptions for corporate debtors.") (internal notes and citations omitted).

[17] "Section 1141(d)(6) was first introduced in 1997 in the limited context of tax fraud debts." Roger S. Goldman et al., *Discharging False claims Liability in Bankruptcy, Section 1141(d)(6)(A) of the Bankruptcy Code: An Incentive to*

suggestion that Congress incorporated 19 new exceptions to discharge for small corporations in a bill that was introduced in April 2019, and signed into law by the President in August 2019,[18] seems not only improbable but also contradicts years of bankruptcy law and policy.[19] "Congress … does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001).

2. *The Need for Consistency in the Scope of the Corporate Debtor Discharge*

As this Court has previously noted, Subchapter V is incorporated into, and part of, *chapter 11* of the Code.[20] Although the entities at issue in a Subchapter V case are smaller than those in most traditional chapter 11 cases, the state law structure of these entities and their need for a balance sheet restructuring are akin to larger chapter 11 cases. These entities act in the same general manner and should be subject to the same potential liabilities through the chapter 11 process. In fact, history has shown that individuals running very large corporations are capable of using the entity for improper purposes, yet the entity receives a discharge in chapter 11 if its plan

---

*Settle FCA Cases?*, ABA J. (2010) (explaining legislative history to section 1141(d)(6), which ultimate was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005).

[18] For the timeline of the Small Business Reorganization Act of 2019, see https://www.congress.gov/bill/116th-congress/house-bill/3311/actions; https://www.congress.gov/bill/116th-congress/senate-bill/1091/actions.

[19] *See, e.g.,* Bonapfel, *supra* note 11 ("Moreover, if the drafters had intended to expand § 523(a) to permit exceptions to the discharge of non-individuals – a significant change in existing chapter 11 law – one would expect the House Judiciary Committee Report to point that out. It does not. To the contrary, the Report's explanation that the exceptions are for 'any debt that is otherwise nondischargeable' demonstrates an intent to apply existing exceptions to discharge in chapter 11 cases in subchapter V, not to expand them.").

[20] *In re Trepetin*, 617 B.R. 841, 848 (Bankr. D. Md. 2020).

is confirmed. It seems incongruent that Congress would penalize a smaller entity for similar individual conduct.[21]

Moreover, the Court notes that, if a Subchapter V entity debtor confirms a *consensual* plan under section 1191(a) of the Code, the exceptions to discharge set forth in section 523(a) do *not* apply to the entity debtor.[22] Rather, under section 1141(d), the entity debtor is discharged from all debts, other than the small carve out for a limited category of debt identified in section 1141(d)(6). It is important to recognize that whether a plan is consensual or nonconsensual under Subchapter V is determined based on *class* voting, and not the actions of individual creditors. 11 U.S.C. § 1126. A debtor also does not definitively know whether a plan is consensual or nonconsensual until the plan is confirmed. 11 U.S.C. § 1191.

In a case such as that before the Court, if another large unsecured creditor voted in favor of the plan and carried the class vote under section 1126,[23] and the plan was confirmed under section 1191(a), the judgment creditor would lose any argument that section 523(a) of the Code applied to its claim. Section 1192 does not apply to consensual plans. The Court believes that any such result is arbitrary and undermines the equality principles of creditor treatment under the Code.

---

[21] A smaller entity debtor may or may not have a close affiliation with the individuals running the entity. There is no required connection between the entity and specific individuals (or family members) as in the chapter 12 context. *See, e.g.,* 11 U.S.C. §§ 101(18), (19A). Moreover, nothing in Subchapter V would discharge or eliminate the personal liability of any individual potentially responsible for the kinds of debt that might be determined nondischargeable under section 523(a) of the Code.

[22] Section 1181(c) provides, "If a plan is confirmed under section 1191(b) of this title, section 1141(d) of this title shall not apply, except as provided in section 1192 of this title." 11 U.S.C. § 1181(c). Consequently, section 1141(d) *does* apply if the plan is confirmed under section 1191(a).

[23] Section 1126 reads, in pertinent part, "(c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan." 11 U.S.C. § 1126.

## IV. Conclusion

The Court appreciates and understands the overlap of Subchapter V with chapters 12 and 13 of the Code. The similarities in the overall structure between Subchapter V and chapters 12 and 13 cannot and should not be denied. Many aspects of chapters 12 and 13 serve a valuable function in streamlining the reorganization process for Subchapter V debtors.

The Court cannot, however, extend those similarities to the scope of the discharge for entity debtors. The nature and purpose of the discharge are different for corporate debtors, and those differences must, in this Court's opinion, be respected in Subchapter V.

The Court is persuaded by Congress' rejection of prior exceptions to discharge for corporate debtors and, more importantly, the plain language that Congress used in section 523(a) to confine those exceptions to individual debtors. Absent clear and unambiguous direction from Congress to deviate from that approach, the Court finds that an entity's discharge under section 1192 of the Code is unimpeded by section 523(a) of the Code. The Court will enter a separate order consistent with this Memorandum Opinion.


cc:  Plaintiff
     Plaintiff's Counsel
     Defendant
     Defendant's Counsel
     Subchapter V Trustee
     U.S. Trustee

**END OF MEMORANDUM OPINION**