**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1981

In re: CLEARY PACKAGING, LLC,

        Debtor.

------------------------------------------

CANTWELL-CLEARY CO., INC.,

        Plaintiff - Appellant,

    v.

CLEARY PACKAGING, LLC,

        Defendant - Appellee.

------------------------------------------

PUBLIC JUSTICE CENTER; LEGAL AID JUSTICE CENTER; MOUNTAIN STATE JUSTICE; NORTH CAROLINA JUSTICE CENTER; CASA; CENTRO DE LOS DERECHOS DEL MIGRANTE; NATIONAL BLACK WORKER CENTER; NATIONAL EMPLOYMENT LAW PROJECT; FARM LABOR ORGANIZING COMMITTEE, AFL-CIO; UNITED STATES OF AMERICA,

        Amici Supporting Appellant.

Appeal from the United States Bankruptcy Court for the District of Maryland, at Baltimore. Michelle W. Harner, Bankruptcy Judge. (21-10765; 21-00056).

Argued: March 10, 2022                                                   Decided: June 7, 2022

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

Reversed and remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** Justin Philip Fasano, MCNAMEE HOSEA, P.A., Greenbelt, Maryland, for Appellant. Robert Joel Branman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States. Paul Sweeney, YUMKAS, VIDMAR, SWEENEY & MULRENIN, LLC, Columbia, Maryland, for Appellee. **ON BRIEF:** Steven L. Goldberg, MCNAMEE HOSEA, P.A., Greenbelt, Maryland, for Appellant. James R. Schraf, YUMKAS, VIDMAR, SWEENEY & MULRENIN, LLC, Columbia, Maryland, for Appellee. Michael R. Abrams, Murnaghan Appellate Advocacy Fellow, PUBLIC JUSTICE CENTER, Baltimore, Maryland, for Amici The Public Justice Center; The Legal Aid Justice Center; Mountain State Justice; The North Carolina Justice Center; CASA; Centro de los Derechos del Migrante; The Farm Labor Organizing Committee, AFL-CIO; The National Black Worker Center; and The National Employment Law Project. David A. Hubbert, Deputy Assistant Attorney General, Joan I. Oppenheimer, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Amicus United States.

NIEMEYER, Circuit Judge:

When Cleary Packaging, LLC, filed a petition in bankruptcy under Subchapter V of Chapter 11 as a "small business debtor," seeking to discharge a $4.7 million judgment that Cantwell-Cleary Co., Inc. had obtained against it for intentional interference with contracts and tortious interference with business relations, Cantwell-Cleary opposed the effort. It argued that 11 U.S.C. § 1192(2), which falls within Subchapter V, provides that small business debtors are not entitled to discharge "any debt . . . of the kind specified in section 523(a) of this title," *id.* § 1192(2), and that § 523(a) in turn lists 21 categories of debt that are non-dischargeable, including debts "for willful and malicious injury by the debtor to another entity or to the property of another entity," *id.* § 523(a)(6). Cleary Packaging argued, however, that because § 523(a)'s list of exceptions to dischargeability is applicable only to "individual debtor[s]," its $4.7 million debt as the debt of a corporation was not covered by the exception contained in § 1192(2) and therefore was indeed dischargeable.[1] Cantwell-Cleary responded that because the language of § 1192(2) incorporates *only the list* of debts — debts "*of the kind* specified in section 523(a)" — and *not the class of debtors* addressed by § 523(a), the $4.7 million debt is non-dischargeable as a debt for willful and malicious injury.

The bankruptcy court, in a nicely crafted opinion, agreed with Cleary Packaging and concluded that its $4.7 million debt was indeed dischargeable, reasoning that the

---

[1] While, for convenience, we use the terms "individual debtor" and "corporate debtor" in a binary fashion, we recognize that Cleary Packaging is a limited liability company under Maryland law. The Bankruptcy Code, however, includes within its definition of "corporation" limited liability companies. *See* 11 U.S.C. § 101(9)(A).

3

exceptions to dischargeability that were incorporated into § 1192(2) from § 523(a) applied only to *individual* debtors. The court relied heavily on the reasoning of *Gaske v. Satellite Restaurants Inc. Crabcake Factory USA (In re Satellite Restaurants Inc. Crabcake Factory USA)*, 626 B.R. 871 (Bankr. D. Md. 2021), which was dismissed on appeal. While the question is a close one, we nonetheless disagree with the bankruptcy court, as explained herein. Accordingly, we reverse the court's ruling and remand.

I

Cantwell-Cleary is a Maryland corporation engaged as a wholesaler of office-related products, particularly packaging supplies, janitorial and sanitation supplies, and paper products. Vincent Cleary Jr., who was on the board of directors of Cantwell-Cleary and its former president and CEO, left the company in June 2018 following a long-running family dispute involving divorce proceedings and internal disagreements over control of the company. He thereafter formed Cleary Packaging, LLC. He took with him numerous employees covered by noncompetition agreements and sensitive customer information and began the new business in competition with Cantwell-Cleary. Shortly thereafter, Cantwell-Cleary commenced an action in the Circuit Court for Anne Arundel County, Maryland, for intentional interference with contracts, tortious interference with business relations, and related claims. On the jury's verdict in favor of Cantwell-Cleary, the state court entered judgment in January 2021 against Cleary Packaging and Vincent Cleary Jr. in the aggregate amount of $4,715,764.98.

Cleary Packaging thereafter filed a petition under Chapter 11 of the Bankruptcy Code, electing to proceed under Subchapter V as a small business enterprise. In its plan for reorganization, it proposed to pay Cantwell-Cleary 2.98 percent of its judgment in biannual installments over a period of five years, for a total of $140,489.77. If the plan were to be approved, the remainder of Cleary Packaging's debt to Cantwell-Cleary would be discharged.

Cantwell-Cleary filed a complaint in the bankruptcy court, seeking a declaratory judgment that the $4.7 million judgment is not dischargeable under 11 U.S.C. §§ 1192(2) and 523(a). It also sought, by motion for summary judgment, a judgment giving preclusive effect in the bankruptcy court to its state judgment. On Cleary Packaging's motion, the bankruptcy court dismissed Cantwell-Cleary's declaratory judgment action, finding that the discharge exceptions in § 1192(2) and § 523(a) do not apply to *corporate* debtors because of limiting language in § 523(a). Specifically, it held that the § 523(a) list of exceptions to dischargeability applies only to *individual* debtors. Because Cleary Packaging was not an individual, but rather a corporation (in this case, a limited liability company), its debt was therefore not excepted from discharge under § 523(a). Consequently, the court also dismissed Cantwell-Cleary's motion for summary judgment as moot.

On Cantwell-Cleary's motion, the bankruptcy court certified a direct appeal to this court of its "Section 523 Opinion and Order," pursuant to 28 U.S.C. § 158(d)(2)(A)(i), and we authorized the appeal by order dated September 8, 2021. The sole question on appeal,

5

therefore, is whether Cleary Packaging, as a Subchapter V corporate debtor, can discharge its $4.7 million debt to Cantwell-Cleary "for willful and malicious injury."

II

In filing its Chapter 11 petition, Cleary Packaging elected to proceed under Subchapter V, and accordingly its discharge of debts is specifically governed by 11 U.S.C. § 1192(2). That section provides: "If the plan of the debtor is confirmed . . . the court shall grant the debtor a discharge of all debts . . . except any debt . . . of the kind specified in section 523(a) of this title." Section 523(a), which applies to a range of bankruptcy code discharge provisions, including § 1192, provides that discharges in those specified sections "do[] not discharge an *individual debtor* from" a list of 21 types of debt, including a debt "for willful and malicious injury," *implying* that such exceptions do not apply to corporate debtors. 11 U.S.C. § 523(a) (emphasis added).

The parties do not dispute that Cleary Packaging's $4.7 million debt created by entry of the state judgment was "for willful and malicious injury" and therefore would qualify as the type of debt that § 523(a) makes non-dischargeable. *See* 11 U.S.C. § 523(a)(6). Rather, the dispute centers on conflicting interpretations of the two relevant provisions — § 1192(2) and § 523(a) — relating to the *kind of debtor* subject to the discharge exceptions listed in § 523(a). Cleary Packaging, focusing on § 523(a), argues that it limits § 1192(2) discharges with respect to the 21 categories of debt only as to *individual debtors*, and therefore corporate debts of the kind listed remain dischargeable. Cantwell-Cleary, on the other hand, focuses on § 1192(2), which applies to both individual and corporate debtors,

6

and argues that the section excludes from discharge *debts of the kind* listed in § 523(a), regardless of the *class of debtor*, whether individual or corporate. Because § 1192(2) is the specific provision governing discharges in Subchapter V proceedings, Cantwell-Cleary argues that if there is any inconsistency, we should give § 1192(2) precedence over the more general § 523(a) and thereby except Cleary Packaging's $4.7 million debt from a discharge, as it is a type of debt listed in § 523(a).

While we recognize a certain lack of clarity in the relationship between § 1192(2) and § 523(a), we conclude, based on our textual review, the provisions' context in the Bankruptcy Code, and practical and equitable considerations, that Cantwell-Cleary makes the more persuasive argument.

A

First, by way of background, we note that in a traditional Chapter 11 proceeding, the debtor submits and the court approves a plan of reorganization for the distribution of the debtor's estate. And when the creditors withhold their consent, any such plan must be fair and equitable in that it must comply with priority rules that establish a hierarchy of creditor classes for the order in which each class of creditor is to be paid. Thus, higher priority creditors are paid in full before payment is made to lower priority creditors. The rule began with judicial construction and, beginning in 1978, was included in the Bankruptcy Code. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988). Known as the "absolute priority rule," it requires that any plan, to which creditors have not consented, must provide that "a dissenting class of unsecured creditors [be paid] in full

before any junior class can receive [payment]." *Id.* (citation omitted); *In re Maharaj*, 681 F.3d 558, 562 (4th Cir. 2012); 11 U.S.C. § 1129(b)(2)(B)(ii). And, as a general matter, any non-consensual plan violating the absolute priority rule may not be approved, nor may a discharge of debts be granted. *See* 11 U.S.C. § 1129(b)(2)(B)(ii). It can be readily recognized, however, that this strict priority rule could preclude reorganizations in which continuing management of the bankruptcy estate by a business's owners would be essential to a successful reorganization because such owners' retention of estate property would violate the priority rule.

Apparently in response to the problem, at least in part, Congress enacted Subchapter V in the Small Business Reorganization Act of 2019, Pub. L. No. 116–54, 133 Stat. 1079, to streamline reorganizations for small business debtors — defined during the relevant time period as those debtors whose debt is not more than $7.5 million, *see* 11 U.S.C. § 1182(1) (2020). One of the main features of a Subchapter V proceeding is its authorization of plans that are not consented to by creditors and that depart from the absolute priority rule of § 1129(b). Under the governing rules of a Subchapter V proceeding, the bankruptcy court need only find that such a plan provide that all of the debtor's projected disposable income is paid to creditors for a 3- to 5-year period and that it be feasible. 11 U.S.C. § 1191(c)(2)(A) and (3). Thus, the owners of a Subchapter V debtor are able to retain their equity in the bankruptcy estate despite creditors' objections.

Subchapter V also provides specific rules for discharge, requiring a court to grant discharge of all debts after approval of the plan except (1) any debt payable *after* the 3- to

8

5-year period specified for payment, and (2) any debt "of the kind specified in section 523(a)." 11 U.S.C. § 1192.

B

We now turn to the text of § 1192(2), which specifically governs Cleary Packaging's discharge, to determine the debts dischargeable under Subchapter V. First, we point out that § 1192(2) provides for granting *debtors* a discharge of all debts, subject to stated exceptions. For the purpose of Subchapter V, the term "debtor" was defined during the relevant time period to mean "a *person* engaged in commercial or business activities" that has debt of not more than $7.5 million. 11 U.S.C. § 1182(1) (2020) (emphasis added). "[P]erson" is in turn defined to include both individuals and corporations, *see id.* § 101(41), and "corporation[s]" include limited liability companies, *id.* § 101(9)(A). We thus conclude that § 1192(2) provides for the discharge of debts for *both* individual and corporate debtors.

Still, even though § 1192(2) applies to both individual and corporate debtors, the question remains whether the exception to such discharges — based on § 1192(2)'s reference to § 523(a) — applies to both individuals and corporations or to only individuals. And that question arises because the introductory language in § 523(a) limits its discharge exceptions to *individual* debtors. Specifically, § 523(a) provides that § 1192, along with five other discharge sections of the Bankruptcy Code, "does not discharge *an individual debtor*" from a list of 21 specified debts, including "any debt . . . for willful and malicious

9

injury,"11 U.S.C. § 523(a)(6) (emphasis added), implying that corporations are not subject to the discharge exceptions.

To address the question, we begin by focusing on § 1192(2) as the provision specifically governing discharges in a Subchapter V proceeding and on the scope of its incorporation of § 523(a). Section 1192(2) excepts from discharge "any *debt . . . of the kind* specified in section 523(a)." 11 U.S.C. § 1192(2) (emphasis added). The section's use of the word "debt" is, we believe, decisive, as it does not lend itself to encompass the "kind" of *debtors* discussed in the language of § 523(a). This is confirmed yet more clearly by the phrase modifying "debt"— i.e., "of the kind." Thus, the combination of the terms "debt" and "of the kind" indicates that Congress intended to reference only the *list of non-dischargeable debts* found in § 523(a). As the U.S. Government's amicus brief notes, this interpretation of "of the kind" is in line "with the ordinary meaning of the word 'kind' as 'category' or 'sort.'" (Citing American Heritage Dictionary of the English Language (online ed.) ("'[a] group of individuals or instances sharing common traits; a category or sort'"); Merriam-Webster Dictionary (online ed.) ("'a group united by common traits or interests: CATEGORY'")). In short, while § 523(a) does provide that discharges under various sections, including § 1192 discharges, do not "discharge *an individual debtor* from any debt" of the kind listed, § 1192(2)'s cross-reference to § 523(a) does not refer to any *kind of debtor* addressed by § 523(a) but rather to a *kind of debt* listed in § 523(a). By referring to the *kind of debt* listed in § 523(a), Congress used a shorthand to avoid listing all 21 types of debts, which would indeed have expanded the one-page section to add several additional pages to the U.S. Code. Thus, we conclude that *the debtors* covered by

10

the discharge language of § 1192(2) — i.e., both individual and corporate debtors — remain subject to the 21 *kinds of debt* listed in § 523(a).

We add — to the extent that one might find tension between the language of § 523(a) addressing individual debtors and the language of § 1192(2) addressing both individual and corporate debtors — that the more specific provision should govern over the more general. *See, e.g.*, *S.W. Ga. Farm Credit, Aca v. Breezy Ridge Farms, Inc. (In re Breezy Ridge Farms, Inc.)*, No. 09-1011, 2009 WL 1514671, at *2 (Bankr. M.D. Ga. May 29, 2009) ("If the two provisions may not be harmonized, then the more specific will control over the general" (quoting *Universal Am. Mortg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 825 (11th Cir. 2003))). Thus, while § 523(a) references numerous discharge provisions of the Bankruptcy Code, § 1192(2) is the more specific, addressing only Subchapter V discharges.

### C

The context of § 1192(2) within the Bankruptcy Code and the Bankruptcy Code's structure further support our interpretation. It is readily apparent from a review of different Bankruptcy Code chapters that Congress conscientiously defined and distinguished the kinds of debtors covered by each provision. For example, Chapter 7 discharges are explicitly limited to individuals, *see* 11 U.S.C. § 727(a)(1), as are Chapter 13 discharges, *see id*. §§ 109(e), 1328. More tellingly, as to traditional Chapter 11 proceedings, Congress explicitly distinguished the discharges of individual debtors from the discharges of corporate debtors in § 1141(d), excluding a different array of debts from discharge for each.

11

*Compare id*. § 1141(d)(2), (5) (addressing the scope of discharge for individuals) *with id*. § 1141(d)(6) (addressing the scope of discharge for corporations). Yet Congress purposefully addressed both individual and corporate debtors when defining the right of discharge in Subchapter V proceedings. *Id*. § 1192.

Cleary Packaging's interpretation would also create difficulty in reconciling § 523(a) with § 1141(d)(6). Section 523(a) includes in its scope § 1141, just as it includes § 1192 and several other sections, and therefore under Cleary Packaging's interpretation, the list of exceptions to discharge in a traditional Chapter 11 proceeding would govern only individuals by reason of § 523(a)'s limiting language. Yet, § 1141 incorporates specified debts listed in § 523(a) to apply *to corporate debtors*, excluding from discharge debts "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a)." 11 U.S.C. § 1141(d)(6)(A). Cleary Packaging has been unable to reconcile its method for applying § 523(a) to § 1192 with any consistency as to how it would apply § 523(a) to § 1141(d)(6).

Yet more telling is Congress's importation of language into Subchapter V from the conceptually similar Chapter 12 proceedings, which are limited to family farmers and family fishermen, whether they be individuals or corporations. *See* 11 U.S.C. § 101(18), (19A); *see also, e.g.*, *In re Trepetin*, 617 B.R. 841, 848 (Bankr. D. Md. 2020) (recognizing that "[s]everal aspects of Subchapter V are premised on the provisions of chapter 12 of the Code for family farmers and fishermen").

In addressing the scope of discharge, Chapter 12 provides, in relevant part, that "the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt . . . *of a kind specified in section 523(a)* of this title." 11 U.S.C. § 1228(a) (emphasis

12

added). This language in Chapter 12 is virtually identical to the language included in § 1192(2).[2] Moreover, § 523(a) specifically references § 1228(a) discharges, just as it does § 1192 discharges. Yet, the courts construing the scope of § 1228(a) have concluded that § 1228(a)'s discharge exceptions apply *to both individual debtors and corporate debtors*. *See, e.g.*, *Breezy Ridge Farms*, 2009 WL 1514671 at *1–2; *New Venture P'ship v. JRB Consol., Inc. (In re JRB Consol., Inc.)*, 188 B.R. 373 (Bankr. W.D. Tex. 1995). Interpreting language virtually identical to that in § 1192(2), the bankruptcy court in *JRB Consolidated* stated that "[t]he wording in § 1228(a)(2) describing 'debts of the kind' specified in § 523(a) does not naturally lend itself to also incorporate the meaning 'for debtors of the kind' referenced in § 523(a)." 188 B.R. at 374. Instead, it stated, "[d]ebts of the kind easily seems to be limited to the subparagraphs of § 523(a) which identify the types of debts which are eligible to be excepted from discharge." *Id.*; *see also Breezy Ridge Farms*, 2009 WL 1514671 at *2 (finding that Congress used the reference to § 523(a) in § 1228 "as shorthand to define the scope of a Chapter 12 discharge for corporations as well as individuals"). Thus, prior interpretations of § 1228(a) support our interpretation of § 1192(2)'s virtually identical language. *See Hall v. United States*, 566 U.S. 506, 519 (2012) ("[I]dentical words and phrases within the same statute should normally be given the same meaning" (citations omitted)). To give different interpretations to the same language in the same statute would ignore the rationality of using the same language in

---

[2] There is one inconsequential difference — § 1228(a) refers to debt "of *a* kind specified," while § 1192(2) refers to debt "of *the* kind specified."

13

describing a different proceeding of the Bankruptcy Code, as was done with the adoption of Subchapter V.

Finally, our interpretation of § 1192(2) in Subchapter V makes particular sense when considering that subchapter's juxtaposition in Chapter 11 with traditional Chapter 11 provisions, reflecting its distinctive purpose within that Chapter. Congress enacted Subchapter V as part of the Small Business Reorganization Act of 2019 with the primary goal of simplifying Chapter 11 reorganizations for small businesses and reducing the administrative costs for those businesses. To do so, Congress deliberately altered the general provisions of traditional Chapter 11 proceedings by, among other things, eliminating the absolute priority rule and limiting the applicability of § 1141(d) to Subchapter V proceedings. Section 1141(d), in particular, sets forth debts that are eligible for discharge in a traditional Chapter 11 proceeding, making distinctions between individual debtors and corporate debtors. *See Breezy Ridge Farms*, 2009 WL 1514671, at *2; *cf. JRB Consol.*, 188 B.R. at 374. In contrast, § 1192 provides benefits to small business debtors, regardless of whether they are individuals or corporations. Thus, an important purpose for Subchapter V would be frustrated were we to adopt Cleary Packaging's interpretation of §§ 1192(2) and 523(a), which would treat individuals and corporations differently.

And as to fairness and equity, it should be recognized that a Subchapter V proceeding involves a non-consensual plan — i.e., a "cram-down" proceeding — in which stakeholders in the bankruptcy estate are treated differently than they would be in traditional Chapter 11 proceedings under the absolute priority rule. Under a Subchapter V

14

plan, owners of a debtor can retain ownership interests to continue conducting the reorganization at the expense of and over the objection of creditors.  Given the elimination of the absolute priority rule, Congress understandably applied limitations on the discharge of debts to provide an additional layer of fairness and equity to creditors to balance against the altered order of priority that favors the debtor.  To this end, *all Subchapter V debtors* are textually subject to the discharge limitations described in § 523(a), not just *individual* Subchapter V debtors.  To make a distinction between individuals and corporations for how Subchapter V is applied would not only undermine that balance, but would also make no sense and indeed would create perverse incentives.  But most importantly, it would violate the text of § 1192(2).

### III

At bottom, while we recognize that the relationship between § 523(a) and § 1192 might be a bit discordant — or perhaps more accurately, clumsy — we find more harmony from following a close textual analysis and contextual review of § 1192(2) and thus conclude that it provides discharges to small business debtors, *whether they are individuals or corporations*, except with respect to the 21 kinds of debts listed in § 523(a).  We would find it difficult to conceive of giving § 523(a) the additional role of defining *the debtors* covered by § 1192(2) in conflict with § 1192(2)'s own language.  That function is actually and better carried out by § 1192, which is the specific provision governing discharges in Subchapter V proceedings and which applies to individual and corporate debtors alike.  Finally, we conclude that our interpretation serves fairness and equity in circumstances

where *a small business corporate debtor* in particular is given greater priority over creditors than would ordinarily apply and thus should not especially benefit from the discharge of debts incurred in circumstances of fraud, willful and malicious injury, and the other violations of public policy reflected in § 523(a)'s list of exceptions.

\* \* \*

Accordingly, we reverse the bankruptcy court's certified order and remand the case for further proceedings, including consideration of Cantwell-Cleary's motion for summary judgment.

REVERSED AND REMANDED